# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

JANET TURNER O'KELLEY, :
Individually and as Personal :
Representative of the Estate of :
John Harley Turner; and JOHN :
ALLEN TURNER, :  CIVIL ACTION NO.
        :  2:17-CV-00215-RWS
  Plaintiffs,   :
        :
  v.     :
        :
SHERIFF DONALD E. CRAIG, *et* :
*al.*       :
        :
  Defendants.  :

## <u>ORDER</u>

This case comes before the Court on Defendants Salcedo and Curtis'

Motion to Dismiss [7] and Pickens Sheriff's Office Defendants'[1] Motion to

Dismiss [21].  After reviewing the record the Court enters the following order.

## Background

This case arises out of a series of events on October 24, 2015, which

ultimately led to the shooting death of John Harley Turner ("Turner") by

---

[1]  In addition to Sheriff Donald E. Craig, the Pickens Sheriff's Office
Defendants are: (1) Sgt. Travis Palmer Curran; (2) Frank Gary Holloway; (3) Keelie
Kerger; (4) Bill Higdon; and (5) Todd Musgrave.

Pickens County Sheriff Deputies and Georgia State Patrol Officers. The following facts are taken from Plaintiffs' Complaint [1] and, for purposes of Defendants's Motions to Dismiss, are accepted as true. Cooper v. Pate, 378 U.S. 546, 546 (1964).

On October 24, 2015, three Pickens County Sheriff Deputies, Frank Holloway, Keelie Kerger, and Bill Higdon, responded to a 911 call for "a completed domestic disturbance" from Kevin Moss. (Compl., Dkt. [1-1] ¶ 24.) Moss reported that he and some others had been accused of trespassing and threatened with bodily harm while hunting near Carver Mill Road. (Id. ¶ 22.) The deputies met Moss at the intersection of Carver Mill Road and Dean Mill Road and then proceeded to 1607 Carver Mill Road.[2] (Id. ¶ 25.)

The Deputies arrived at the premises around 9:00 p.m. and met Mr. O'Kelley. (Id.) Mr. O'Kelley informed the deputies that Turner had threatened the hunters and that Turner was currently armed. (Id. ¶ 28.) Turner approached the deputies, armed with a pistol in a chest holster. (Id. ¶ 29.) The

_____

[2] Turner, his mother, Janet Turner O'Kelley, and her husband, Stan O'Kelley, live at 1607 Carver Mill Road. (Compl., Dkt. [1] ¶ 26.) The main house is occupied by Plaintiff Janet Turner O'Kelley and Stan O'Kelley, while Turner lived in a small house behind the main house. (Id.) Both houses are enclosed by a fence and gated. (Id.)

AO 72A
(Rev.8/82)

deputies ordered Turner to put down his gun.  (Id. ¶ 30.)  Turner asked the

deputies why they were trespassing, and the deputies informed Turner that they

were "cops."  (Id.)

Shortly after, Deputy Todd Musgrave, Deputy Travis Curran, and two

Georgia State Patrol Officers, Jonathan Salcedo, and Rodney Curtis, arrived at

the premises.  (Id. ¶ 31.)  Curran had two shotguns, one that was loaded with

beanbag rounds.  (Id.)  The two Georgia State Patrol officers were armed with

rifles and took "sniper positions."  (Id.)  By this time, Turner had un-holstered

his pistol and was carrying it above his head.  (Id. ¶ 32.)  The deputies

continued to ask Turner to put down the gun and get on the ground.  (Id.)

Ms. O'Kelley arrived home around 9:05 p.m.  (Id. ¶ 34).  Ms. O'Kelley

told the deputies "that [Turner] would defend himself if [the deputies] opened

fire."  (Id.)  The deputies sent Ms. O'Kelley back down the driveway and out of

the way.  (Id.)

For the next half-hour, Turner (who had returned the pistol to his chest

holster) and went back and forth with the deputies–Turner, on the one hand,

wanting trespassers off his property, and the officers, on the other, wanting

Turner to put the gun down.  (Id. ¶ 35.)  During the exchange, Turner did not

3

verbally threaten or point his gun toward the deputies, nor did he leave the gated area.  (Id. ¶¶ 37–38.)  During the exchange, Turner was "distressed" and challenged the deputies to "go ahead and shoot [him]."  (Id. ¶ 36.)  The deputies "repeatedly reassured [Turner] that they were not going to shoot him."  (Id.)

Around 9:12 p.m., Curran and Higdon moved to "get a better position" which involved crossing the fence to Turner's residence.  (Id. ¶ 39.)  The deputies moved into place while Turner was in his cabin getting water.  (Id. ¶ 40.)  When Turner came back outside, he told the deputies again that they were trespassers and that he wanted them to leave.  (Id. ¶ 41.)

Deputy Kerger, who was unarmed, introduced herself to Turner and asked that he put down his gun and come speak with her.  (Id. ¶ 42.)  Turner responded that he did not have his gun, which was openly in his chest holster.  (Id.)  The deputies continued to tell Turner that they would not speak with him unless he took his gun out of the holster and put it on the ground.  (Id.)

Turner, still armed, started to make his way toward the fence where Kerger was standing.  (Id. ¶ 43.)  Deputy Curran fired three beanbag rounds from his shotgun, knocking Turner to the ground.  (Id.)  In response, Turner

4

drew his pistol and fired.  (Id. ¶ 43.)  The other deputies returned fire.  (Id. ¶

44).  Turner was shot and died at the scene.  (Id.)

Plaintiffs Janet Turner O'Kelley, individually and as personal

representative of the Estate of John Harley Turner, and John Allen Turner

brought this suit against Sheriff Craig, Sergeant Curran, Deputy Holloway,

Deputy Kerger, Deputy Higdon, Deputy Musgrave, Officer Slacedo, and

Officer Curtis.  Plaintiffs brings her claims under both federal and state law.  In

particular, Plaintiffs allege causes of action under 42 U.S.C. § 1983 for

violations of Turner's constitutional rights under the Fourth and Fourteenth

Amendments (Count I and IV).[3]  Plaintiffs further allege a failure to train claim

(Count II).  And, Plaintiffs raise claims under Georgia tort law for wrongful

---

[3] Plaintiffs entitle their first cause of action "Violations of Fourth and
Fourteenth Amendments" without making reference to 42 U.S.C. § 1983.  Because
Plaintiffs are seeking monetary relief, the Court construes Count I as a claim under
Section 1983.  See Livadas v. Bradshaw, 512 U.S. 107, 132 (1994) (describing
Section 1983's role as a vehicle through which individuals may seek redress when
their federally protected rights have been violated).  Furthermore, it is the Fourth
Amendment that prohibits an unreasonable seizure of a person and governs claims of
excessive force "in the course of an arrest, investigatory stop, or other 'seizure' of a
free citizen . . . ." Id. at 395.  The arguments in Plaintiffs' briefs also rely solely on the
Fourth Amendment.  Thus, the Court assumes the Complaint's reference to the
Fourteenth Amendment is limited to its incorporation of the Fourth Amendment into
the states and their local governmental entities.  Accordingly, the Court simply uses
the term Fourth Amendment in this Order.

AO 72A
(Rev.8/82)

death (Count III). Finally, Plaintiffs assert that they are entitled to reasonable attorney's fees (Count V).[4]

Defendants now move to dismiss each of those claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot. To Dismiss Defs.' Salcedo and Curtis, Dkt. [7]; Mot. To Dismiss Compl., Dkt. [21].) The Court sets out the legal standard governing Defendants' Motions to Dismiss before considering the motions on their merits.

## Discussion

## I. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements

---

[4] Plaintiffs also contend, in one of their response briefs, that those officers who did not shoot Turner are liable for failing to intervene. (Pl.'s Br. In Opp. To Pickens Sheriff's Office Defs.' Pre-Answer Mots. To Dismiss, Dkt. [22] at 19–20.) This theory of liability is not alleged in the Complaint, and "[a] plaintiff cannot amend the complaint by arguments of counsel made in opposition to a motion to dismiss." In re Androgel Antitrust Litig. (No. II), 687 F. Supp. 2d 1371, 1381 (N.D. Ga. 2010) (quoting Kuhn v. Thompson, 304 F. Supp. 2d 1313, 1321 (M.D. Ala. 2004)). But, for the reasons laid out in this Order, the Court need not consider the merits of that argument, at any rate.

AO 72A
(Rev.8/82)

of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

To withstand a motion to dismiss, "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on

its face when the plaintiff pleads factual content necessary for the court to draw

the reasonable inference that the defendant is liable for the conduct alleged. Id.

At the motion to dismiss stage, "all well-pleaded facts are accepted as

true, and the reasonable inferences therefrom are construed in the light most

favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273

n.1 (11th Cir. 1999). However, the same does not apply to legal conclusions

set forth in the complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260

(11th Cir. 2009) (citing Iqbal, 556 U.S. at 678). "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

suffice." Iqbal, 556 U.S. at 678. Furthermore, the court does not "accept as

true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at

555.

AO 72A
(Rev.8/82)

## II.    Analysis

Defendants move to dismiss Plaintiffs' Complaint on three grounds. First, Defendants argue that the Pickens County Sheriff's Deputies and Georgia State Patrol Officers are entitled to qualified immunity for claims under 42 U.S.C. § 1983.  Second, Defendants argue that Plaintiffs do not allege sufficient facts to hold Sheriff Craig liable for failure to train.  Finally, Defendants argue that Plaintiffs' state law claims against the Deputies and Officers are barred by the doctrine of official immunity.  Plaintiffs oppose Defendants' motions, arguing that  Defendants are not protected by official or qualified immunity for the conduct underlying Plaintiffs' state or federal claims respectively, and that the Complaint alleges sufficient facts to make out a plausible failure to train claim.  Using the legal framework set forth above, the Court examines Plaintiffs' claims to determine whether the Complaint states a claim upon which relief may be granted.

### A.    Federal Claims Against the Pickens County Sheriff's Deputies and Georgia State Patrol Officers

"In order to prevail in a civil rights action under Section 1983, 'a plaintiff must make a prima facie showing of two elements: (1) that the act or

8

omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law.'" Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (quoting Bannum, Inc. v. City of Ft. Lauderdale, 901 F.2d 989, 996–97 (11th Cir. 1990)).

However, the doctrine of qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To claim qualified immunity, a defendant must first show he was performing a discretionary function. Moreno v. Turner, 572 F. App'x 852,855 (11th Cir. 2014). "Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply." Edwards v. Shanley, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1291 (11th Cir. 2009). A plaintiff demonstrates that qualified immunity does not apply by showing: "(1) the

defendant violated a constitutional right, and (2) the right was clearly established at the time of the alleged violation." Moreno, 572 F. App'x at 855.

As a threshold matter, the Court concludes that Defendants were acting pursuant to their discretionary authority when the events at issue occurred. See, e.g., Kesinger v. Herrington, 381 F.3d 1243, 1248 (11th Cir. 2004) (officer's use of deadly force in altercation with defendant was clearly within the scope of his discretionary authority); Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (officer's arrest after investigating neighbor complaint was clearly within the scope of his discretionary authority). Thus, there are two remaining inquiries: whether Plaintiffs have alleged sufficient facts in the Complaint to illustrate a violation of a constitutional right and, if so, whether that right was clearly established at the time in question.

### 1. Fourth Amendment Violation

Plaintiffs contend that Turner's Fourth Amendment rights were infringed based upon trespass and excessive force. It is a "basic principle of Fourth Amendment law" that searches and seizures inside a home without a warrant are presumptively unreasonable." Bashir v. Rockdale Cty., 445 F.3d 1323, 1327 (11th Cir. 2006). This freedom from unreasonable searches and seizures

includes "the right to be free from the use of excessive force in the course of an investigatory stop, or other 'seizure' of the person." Kensinger, 381 F.3d at 1248 (citing Graham v. Connor, 490 U.S. 386 (1989) and Tennessee v. Garner, 471 U.S. 1 (1985)).

The test to determine whether a violation of the Fourth Amendment occurred is an objective one. The Court must ask whether the Defendants' conduct was objectively reasonable in light of the facts and circumstances confronting them, regardless of any underlying intent or motive. Id. Each officer's conduct "must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." Id. Applying this standard at the motion to dismiss stage, the Court finds that Plaintiffs have not set forth facts sufficient to establish that either the fatal shooting or the events leading up to it were objectively unreasonable under the circumstances.

Plaintiffs assert that because there was no warrant authorizing Defendants "to come onto the O'Kelley property or to seize [Turner] against his will within the curtilage of his home" the trespass of Deputies Curran and Higdon and the excessive force used by all Defendants violated Turner's

11

Fourth Amendment freedoms.[5] (Compl., Dkt. [1] ¶ 46.) Plaintiffs further allege that no legal exception applies to the lack of warrant. (Id. ¶ 48.) While it is undisputed that the Deputies did not have a warrant prior to the seizure, even a warrantless arrest in a home is permitted if the officer "had probable cause to make the arrest and either consent to enter or exigent circumstances demanding that the officer enter the home without a warrant." Bashir, 445 F.3d at 1328.

### a.    Probable Cause

"Probable cause exists when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances, that the suspect has committed, is committing, or is about to commit an offense.'" Kinzy v. Warren, 633 F. App'x 705, 707 (11th Cir. 2016) (internal quotations omitted). For an officer to be shielded by qualified immunity, the officer does not need to have actual probable cause but rather arguable

---

[5] As the question of whether the premises surrounding the home constitutes curtilage is a question of fact, at this stage in the litigation it will be taken as true that Turner was seized within the curtilage of his home. See United States v. Berrong, 712 F.2d 1370, 1375 (11th Cir. 1983).

probable cause.  Id.  "Arguable probable cause is present where reasonable officers in the same circumstances and possessing the same knowledge as the defendant could have believed that probable cause existed."  Id.

Defendants claim that there was arguable probable cause for both the trespass as well as the use of excessive force.  Plaintiffs dispute this position for two reasons: first, that the facts alleged do not satisfy Georgia's terroristic threat statute, and second, that Turner's non-cooperation with the Deputies did not create probable cause for the seizure.  The Court disagrees and finds that Defendants' conduct was supported by arguable probable cause.

As for Georgia's terroristic threat statute, that law, in relevant part, makes it a crime to threaten to "[c]ommit any crime of violence[.]"  O.C.G.A. § 16-11-(b)(1)(A).  Defendants, here, were responding to a 911 call in which the caller specifically referenced a potential threat of bodily harm.  (Compl., Dkt. [1-1] ¶ 22 (describing a 911 call in which a hunter told the operator that "a person on a neighboring property had yelled at [him and his companions] through the woods, accusing them of trespassing and threatening them with bodily harm if they did not leave"); id ¶ 24 (911 operator reported the call to Pickens County Sheriff's deputies and dispatched them to the scene); id. ¶ 25

13

(Deputies spoke to the caller before proceeding to Plaintiffs' residence)); see also Poole v. State, 756 S.E.2d 322, 327 (Ga. Ct. App. 2014) ("[T]he essential elements of terroristic threats and acts are: (1) a threat to commit any crime of violence (2) with the purpose of terrorizing another."). An officer is not required to prove every element of a crime prior to making an arrest, as this would "transform arresting officers into prosecutors." Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002) (quoting Scarbrough v. Myles, 245 F.3d 1299, 1303 (11th Cir. 2001)). Thus, based on the emergency phone call, Defendants had arguable probable cause to believe Turner violated the terroristic threat statute.

Likewise, Defendants had arguable probable cause to seize Turner based on his failure to cooperate and the attenuating circumstances. Indeed, as Defendants say, it is not Turner's non-cooperation alone that establishes probable cause, but rather the entirety of the circumstances. Lee, 284 F.3d at 1195 ("For probable cause to exist, . . . an arrest must be objectively reasonable based on the totality of the circumstances."). The Complaint alleges that Defendants were responding to a 911 call of a threat of bodily harm. (Compl., Dkt. [1] ¶ 22.) When Defendants arrived at the premises, Turner was armed and agitated. (Id. ¶ 29.)

Ms. O'Kelley, who arrived shortly thereafter, informed the officers that Turner would "defend himself." (Id. ¶ 34.) When the officers tried to get Turner to put down the gun, he denied being armed. (Id. ¶ 30.) During the interaction, Turner became distressed, held the pistol above his head, and even challenged the officers to shoot him. (Id. ¶¶ 32, 36.) When Turner, who was still armed, made his way toward an unarmed deputy, a fellow deputy used non-lethal force to stop him. (Id. ¶ 43.) Only after Turner used deadly force, did Defendants respond with equal force. (Id. ¶¶ 43–44.) Therefore, Defendants had arguable probable cause for the seizure.

### b. Exigent Circumstances

While probable cause itself does not validate a warrantless home seizure, the seizure may be justified by exigent circumstances.[6] The exigent circumstance exception permits a warrantless entry "when there is compelling need for official action and no time to secure a warrant." United States v. Holloway, 290 F.3d 1331, 1337 (11th Cir. 2002). Plaintiffs allege there were

---

[6] As stated above, consent may also justify a warrantless home seizure. However, as this case is before the Court on motions to dismiss, the Court concludes, for the purposes of this Order, that Defendants did not have consent to enter. The Complaint does not allege any express consent, and implied consent is insufficient. See Bashir, 445 F.3d at 1329.

15

no exigent circumstances present to support a warrantless seizure as the individual who made the call was already safe. However, the Eleventh Circuit has stated that "[t]he fact that no victims are found, or that the information ultimately proves to be false or inaccurate, does not render the police action any less lawful. . . . As long as the officers reasonably believe an emergency situation necessitates their warrantless search, whether through information provided by a 911 call or otherwise, such actions must be upheld as constitutional." Id. "The most urgent emergency situation excusing police compliance with the warrant requirement is, of course, the need to protect or preserve life." Id. at 1335 (citing Mincey v. Arizona, 437 U.S. 385, 392 (1978)).

For the reasons previously stated in Part II.A.1.a., supra, exigent circumstances existed because it was reasonable for Defendants to believe that an armed suspect was inside the subject premises who posed a potential threat to those in the surrounding area or the officers. Accordingly, based on the facts alleged in the Complaint, Plaintiffs have not established that a constitutional right was violated.

2.    *Clearly Established*

16

The Court also finds that Plaintiffs have failed to show the constitutional right was clearly established at the time of the incident. "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001). There are two methods for determining whether the constitutional right was clearly established: (1) look to binding court decisions or (2) "ask whether the officer's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to [the officer], notwithstanding the lack of fact-specific case law on point." Moore v. Pederson, 806 F.3d 1036, (11th Cir. 2015) (internal quotation and citation omitted). However, "[i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." Pickens v. Hollowell, 59 F.3d 1203, 1206 (11th Cir. 1995) (quoting Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993).

Plaintiffs argue that the Moore decision–a case that "came down . . . nine days before the events at issue"–clearly established a constitutional violation in the case at hand. (Pl.'s Br. In Opp. To Pickens Sheriff's Office Defs.' Pre-

Answer Mots. To Dismiss, Dkt. [22] at 14.) Plaintiffs assert that the only

distinction between Moore and the present case is that the seizure in Moore

occurred while the plaintiff was inside his dwelling whereas Turner was

outside. (Id.) However, the cases are factually different and "only factually

specific analogous caselaw can clearly establish a constitutional violation."

Moore, 806 F.3d at 1047. Unlike the case at hand where Defendants responded

to a 911 call made in regard to violent threats, in Moore, the defendant

responded to a neighbor complaint about an argument that "did not sound

violent." Id. at 1040. Further, the plaintiff in Moore was not armed during the

seizure, nor did anyone involved appear to be distressed. Id. Although Moore

refused to provide identification when requested, he complied with the officer's

instructions to turn around and put his hands behind his back. Id. By contrast,

here, when the officers arrived at the premises, they were told Turner was

armed, and when Turner appeared he was, in fact, visibly armed. Turner was

also distressed and agitated, and he remained so during the seizure and refused

to comply with the deputies' repeated requests to disarm.

While Moore clearly establishes that "an officer may not conduct a

Terry-like stop in the home in the absence of exigent circumstances," id. at

1047, it is too dissimilar from the present case and, therefore, does not clearly

establish a constitutional violation, see Part II.A.1.b., supra. Accordingly,

Defendants' Motions to Dismiss as to Plaintiff's Section 1983 claims are

**GRANTED**.

    B.    Failure to Train Claim Against Sheriff Craig

It is well settled in this Circuit that "supervisory officials are not liable

under [Section] 1983 for the unconstitutional acts of their subordinates on the

basis of respondeat superior or vicarious liability." Keith v. Dekalb Cty., 749

F.3d 1034, 1047 (11th Cir. 2014) (quoting Cottone v. Jeene, 326 F.3d 1352,

1360 (11th Cir. 2003). There are no allegations that Sheriff Craig participated

personally in the immediate events leading up to Turner's death, nor that he

was present at the time in question. Rather, Plaintiffs base their Section1983

claim against Sheriff Craig on a failure to train the Pickens County Sheriff

Deputies.[7]

To establish liability under Section 1983 based on the inadequacy of

---

    [7] At the outset, the Court notes that although Sheriff Craig had supervisory
authority over the Pickens County Sheriff Deputies, because Plaintiffs have failed to
state a Section 1983 claim against the Deputies, Plaintiffs' supervisory liability claim
against Sheriff Craig also fails. Nonetheless, the Court proceeds to address Plaintiffs'
claim on the merits.

AO 72A
(Rev.8/82)

police training, a plaintiff must show that "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Am. Fed'n of Labor & Cong. Of Indus. Orgs. v. City of Miami, 637 F.3d 1178, 1188 (11th Cir. 2011) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)) "Deliberate indifference can be established in two ways: by showing a widespread pattern of similar constitutional violations by untrained employees or by showing that the need for training was so obvious that a . . . failure to train . . . employees would result in a constitutional violation." Mingo v. City of Mobile, 592 F. App'x 793, 799–800 (11th Cir. 2014), cert denied, 135 S.Ct. 2895 (2015).

Here, the Complaint does not include sufficient facts about a history of abuse or widespread problems that would allow the Court to find that Sheriff Craig was put on notice regarding the need for more training. The Complaint contains only conclusory allegations about Sheriff Craig's failure to provide adequate training regarding "arrest procedures and the use of force." (Compl., Dkt. [1-1] ¶ 65.) Essentially, Plaintiff has simply stated a conclusion—that Defendants "failed to institute adequate policies and training to govern arrest procedures and the use of force, including the use of deadly force" —but has

20

not provided sufficient facts from which the Court could draw that conclusion.

Id.  The Court cannot accept these unsupported allegations as a valid basis for a

claim.  See Oxford Asset Mgmt. v. Jaharis, 297 F.3d 1182, 1187–88 (11th Cir.

2002) (stating that "conclusory allegations, unwarranted deduction of facts[,] or

legal conclusions masquerading as facts will not prevent dismissal").  Without

a basis in specific facts, such assertions are not sufficient to show that the

training was inadequate and that Sheriff Craig was on notice of any deficiency.[8]

As a result, the Complaint does not include facts from which the Court could

conclude that Sheriff Craig has violated Section 1983 under a theory of

inadequate training.  Defendants' Motion to Dismiss as to Plaintiffs' failure to

train claim is, therefore, **GRANTED**.

    C.    State Law Claims Against Pickens Sheriff's Office Defendants[9]

---

[8]  Of course, there is an "obvious need to train [armed] police officers on the constitutional limitations on the use of deadly force."  Gold v. City of Miami, 151 F.3d 1346, 1352 (11th Cir. 1998) (citing City of Canton, 48 U.S. at 390 n.10).  But Plaintiff's Complaint still falls short.  Mere notice of a need to train or supervise is not sufficient.  Rather, a plaintiff must further establish that a final policymaker "made a deliberate choice not to take any action."  Id. at 1350.  The Complaint does not identify a specific decision made by Sheriff Craig resulting in a systemic failure to adequately train and supervise police officers.

[9]  Though not apparent from the face of the Complaint, Plaintiffs clarify in an opposition brief that they did not intend to assert any state law claims against the Georgia State Patrol Officers, Salcedo and Curtis.  (Pls.' Br. In Opp. To The Georgia

Defendants argue that Plaintiffs' state law claims against the Pickens

Sheriff's Office Defendants are barred by official immunity. The state

constitutional provision governing official immunity provides as follows:

> [A]ll officers or employees of the state or its departments and
> agencies may be subject to suit and may be liable for injuries and
> damages caused by the negligent performance of, or negligent
> failure to perform, their ministerial functions and may be liable for
> injuries and damages if they act with actual malice or with actual
> intent to cause injury in the performance of their official functions.
> Except as provided in this subparagraph, officers and employees
> of the state or its departments and agencies shall not be subject to
> suit or liability, and no judgment shall be entered against them, for
> the performance or nonperformance of their official functions.

Ga. Const. art. I, § 2, ¶ 9(d). The Supreme Court of Georgia has held that the

term "official functions" refers to "any act performed within the officer's or

employee's scope of authority, including both ministerial and discretionary

acts." Gilbert v. Richardson, 452 S.E.2d 476, 483 (Ga. 1994). Accordingly,

"[u]nder Georgia law, a public officer is not personally liable for a

discretionary act unless the officer 'acted with actual malice or actual intent to

cause injury.'" Felio v. Hyatt, 639 F. App'x. 604, 611 (11th Cir. 2016)

---

State Patrol Defs.' Pre-Answer Mots. To Dismiss, Dkt. [23] at 7.) Accordingly, this
section pertains only to the individual Deputies of Pickens Sheriff's Office who
responded to the incident.

(quoting Valades v. Uslu, 689 S.E.2d 338, 343 (Ga. Ct. App. 2009), overruled on other grounds by Harrison v. McAfee, 788 S.E.2d 872 (Ga. Ct. App. 2016)). As a threshold matter, the Court concludes that Defendants were acting within their discretionary authority during the events leading up to Turner's death. However, Plaintiffs have failed to show any actual malice or intent to injure on the part of Defendants under the applicable legal standards.

Both actual malice and actual intent to cause injury are demanding standards. Felio, 639 F. App'x at 611–12. "'[A]ctual malice' requires a deliberate intention to do wrong, and denotes express malice or malice in fact. It does not include willful, wanton, or reckless conduct or implied malice. Thus, actual malice does not include conduct exhibiting a reckless disregard for human life." Daley v. Clark, 638 S.E.2d 376, 386 (Ga. Ct. App. 2006).

Defendants first argue that they enjoy official immunity for any negligence-based claim resulting from the performance of discretionary acts and reason that since a claim for wrongful death is based in negligence (as opposed to malice), Defendants are necessarily entitled to official immunity. See Hoyt v. Cooks, 672 F.3d 972, 981 (11th Cir. 2012). It is not so simple, however. Even in a claim like wrongful death, the Supreme Court of Georgia

AO 72A
(Rev.8/82)

has stated that if an officer acts solely with actual intent to cause injury—that is, firing "intentionally and without justification"—then he or she would not be protected by official immunity. Kidd v. Coates, 518 S.E.2d 124, 125 (Ga. 1999); see also Filio, 639 F. App'x at 612.

Nonetheless, the Court agrees with Defendants that Plaintiffs have not alleged that Defendants' actions were performed "with actual malice or with actual intent to cause injury." Ga. Const. of 1983, Art. I, Sec. II, Par. IX(d). While Plaintiffs assert Defendants' acts were intentional and without justification (Compl., Dkt. [1] ¶ 69), actual intent to cause injury requires more than merely the "intent to do the act purportedly resulting in the claimed injury. This definition of intent contains aspects of malice, perhaps a wicked or evil motive." Felio, 639 F. App'x at 611.

The Complaint alleges that Defendants encountered Plaintiff after responding to a 911 call regarding a threat of bodily harm. (Compl., Dkt. [1] ¶ 22.) When Defendants arrived, Turner was armed and refused to comply with the deputies' multiple requests to disarm. (Id. ¶ 29, 30, 32.) When Turner, still armed, made his way towards an unarmed officer, a deputy fired beanbag rounds to which Turner responded by firing his pistol. (Id. ¶ 42–43.) Only

24

then did Defendants apply deadly force by returning fire.  (<u>Id.</u> ¶ 44.).  The only

inference to "malice" in the Complaint is a threadbare characterization of

Defendants' conduct as "unlawful intentional acts."  (<u>Id.</u> ¶ 69.)  This

conclusory allegation is insufficient to establish malice, and the mere intent to

return fire is not enough.  As a result, the Complaint does not allege any malice

or intent to injure.  Defendants are, therefore, entitled to official immunity;

Defendants' Motion to Dismiss as to Plaintiffs' state law wrongful death claim

is **GRANTED** .

    D.  <u>Attorney's Fees</u>

As none of the Plaintiffs' substantive causes of action remain in this

litigation, Defendants' Motions to Dismiss as to Plaintiff's claim for attorney's

fees are **GRANTED**.

**Conclusion**

For the foregoing reasons, Defendants' Motions to Dismiss Plaintiffs'

Complaint [7, 21] are **GRANTED**.  Plaintiffs' Complaint is **DISMISSED**.  The

Clerk is **DIRECTED** to close the case.

**SO ORDERED**, this 27th day of September, 2018.

_Richard W. Story_

_____

**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)